CRINER v. STATE.

5058                                           365 S. W. 2d 252

Opinion delivered March 4, 1963.

*Claude Cooper, W. B. Howard,* for appellant.

*Jack Holt, Jr.,* Attorney General, by, *Thorp Thomas* and *Russell J. Wools,* Asst. Attorneys General, for appellee.

PAUL WARD, Associate Justice. Appellant, M. L. Criner, was charged in a two count indictment with having forged the name of "Sam Simmons" on a check drawn on The Farmers' Soybean Corporation of Blytheville and with uttering the same, all with the intent to defraud said corporation out of its money and property. After a lengthy trial the jury found appellant guilty on both counts. The court fixed the punishment at six years on each count and pronounced judgment accordingly with

the terms to run concurrently. From said judgment appellant now prosecutes this appeal, asking a reversal on four separate grounds hereafter discussed.

Since appellant does not question the sufficiency of the evidence to sustain the verdicts, we deem it sufficient for this opinion to make only such a summary abstract of the testimony as is necessary to an understanding of the issues. Appellant was an employee and also the assistant manager of said corporation which buys and stores soybeans, wheat and other grains raised in that vicinity. He had authority to weigh grain purchased for the company and to issue checks to the sellers. Apparently the theory of the prosecution was that appellant would "buy" grain from a fictitious seller, sign a check to the "seller", forge the name of the fictitious payee on the back of the check, and then cash the check and keep the money. Treating the testimony in the light most favorable to sustain the convictions, we find substantial evidence to support the jury in finding: Appellant signed a company check in the amount of $529.90, dated October 19, 1960, payable to "Sam Simmons"; The name of the payee represented a fictitious person; Appellant wrote the name "Sam Simmons" on the back of the check; Appellant then presented the check to a teller in the First National Bank in Blytheville, received the amount of money above mentioned, and kept same.

*One.* The first point urged by appellant is: "The court erred in refusing to allow appellant to take the deposition of Bud Neal, a non-resident witness." At the prior term of court appellant had been tried and acquitted of a charge similar to this one, and Bud Neal (a resident of Missouri) was present as a witness. The trial in the case on appeal was set for (Thursday) April 5, 1962. On the day before (April 4) appellant filed a motion for continuance until the next term of court in order to take the deposition of Neal as a material witness. In the motion it is stated that Neal would not come voluntarily to testify but was ready to give his deposition. The required affidavit was attached, and due diligence was alleged. The trial court denied the motion, and no error based on the denial is now urged.

Appellant's motion for a continuance (above mentioned) was denied on Wednesday, April 4, 1962. The trial began the following morning (Thursday) and continued until 4 p.m. on Friday (the next day) at which time the State rested its case, and court recessed until the following Monday morning, April 9. At 7:30 a.m. Saturday (April 7) appellant filed an affidavit in compliance with Ark. Stats. § 43-2011 and requested the presiding judge to give him permission to take the deposition of Neal. The judge refused to grant the request at that time, but did give appellant a hearing on the following Monday after the trial had been resumed. At that time the trial judge denied the request on the ground that the application ". . . was not made at the proper time and with due diligence."

We think the trial court was correct in denying appellant's application to take the deposition of Neal, a non-resident, considering the applicable law and the facts of this case. In the case of *Jones* v. *State,* 205 Ark. 806, 171 S. W. 2d 298, we had occasion to interpret §§ 3946-49 of Pope's Digest which is the same as § 43-2011 relied on by appellant, and we held due diligence was a prerequisite on the part of the applicant. Some of the language there used is particularly applicable here.

"The defendant in the case at bar, in filing a motion to take depositions was seeking a continuance by indirection, because the granting of the motion would have gained for him the continuance that had been denied."

Appellant has no quarrel with the *Jones* decision, but does say: "We simply contend that we did exercise diligence on our motion for the taking of the deposition." We are wholly unable to agree with appellant in the above statement. Not only does the timetable of events preceding the application (as above set out) strongly indicate lack of diligence on the part of appellant, but the record is replete with testimony to the effect that appellant knew or should have known months before the trial that Neal would not be present at the trial to testify in person.

*Two.* We see no merit in appellant's argument of former jeopardy and *res judicata.* It was shown that appellant was tried and acquitted on a similar charge in the same court about five months' previously. In that case appellant was charged with having forged the endorsement of G. D. Renfro to a check (drawn on the same corporation as in the present case) and having uttered the same. During that trial several checks drawn on the same company (including the Simmons check) were introduced by the State on the theory that they showed a common plan, scheme and method of operation on the part of appellant. There can be no contention that appellant is now being tried for the same offense for which he was formerly tried. Obviously it is possible for him to be innocent of forging the Renfro check and still be guilty of forging the Simmons check. In the case of *Binganan* v. *State,* 181 Ark. 94, 24 S. W. 2d 969, we said: " 'The test is ... whether he [the defendant] has been put in jeopardy for the same offense.' " See also: *Johnson* v. *State,* 199 Ark. 196, 133 S. W. 2d 15.

*Three.* It is here contended that the court erred in allowing a State's witness, who was not an expert, to express an opinion on the similarity of handwriting. Briefly, the facts and circumstances upon which this contention is based are as follows: John Caudill, a witness for the State, and the secretary of the Soybean Company, was shown a number of questionable checks which had been written on his company by appellant. He stated that appellant had a very distinctive signature which made it easy to recognize his handwriting, and that to a layman or ordinary person it was apparent that the same person who had written the face of the checks had endorsed them. It was then objected that the witness was not an expert. The State's attorney said: "That is correct." After another objection was made the court looked at the checks and again overruled the objection. We do not think the court committed reversible error in permitting the witness to testify. That the witness was familiar with appellant's handwriting is shown by his statement that it was distinctive and easily recognized. In 20 Am. Jur. Evi-

dence § 837, at page 701, in speaking of "Qualification of Witness" we find:

"It is necessary, in order that a lay witness may be qualified to express an opinion upon an issue of the genuineness of a disputed signature or handwriting, that it appear that he have some familiarity with the handwriting of the person in question . . . Of course, the opinion of a witness as to the genuineness of a signature, based upon limited opportunities for knowledge of the handwriting of the person whose signature is in question, may have but little probative value, but it is admissible nevertheless."

In the case of *Walsh* v. *Fairhead, Executrix,* 215 Ark. 218, 219 S. W. 2d 941, we held, in substance, that a non-expert witness may testify as to his opinion after stating the facts upon which the opinion is based. See also *Naylor* v. *Eagle,* 227 Ark. 1012, 303 S. W. 2d 239.

*Four.* Finally, appellant says the court erred in giving Instruction No. 7-A because it was a comment on the evidence. The instruction reads as follows:

"You are to consider and try this case solely and wholly upon the evidence adduced herein and upon the instructions of law given herein, and you are not to consider any reference to any former trial as it is incompetent herein."

Appellant objected to the instruction but was overruled by the court. The attorney for appellant, who incidentally did not participate in the trial of the case, makes a strong written and oral argument to show the instruction was prejudicial. However, we are not at liberty to rest our decision on the validity or invalidity of that argument since appellant did not save exceptions to the ruling of the court. In the early case of *St. Louis Iron Mountain & Southern Ry. Co.* v. *Raines,* 90 Ark. 482, 119 S. W. 266, this Court, in dealing with a similar situation, said:

"But the appellant is in no attitude to complain of the action of the court in refusing to do this; for it did not save any exception to the ruling of the court on that point. To render an assignment of error available on

appeal, an exception must not only be saved at the trial to the ruling of the court, but the exception must be preserved in the motion for a new trial.''

This rule has been consistently followed or approved. Act 555 of 1953 changed the rule as it applies to civil cases but not as to criminal cases. See *Cotton* v. *Ingram,* 114 Ark. 300, 169 S. W. 967; *Harvey et al* v. *Kirk,* (Ark.) 168 S. W. 2d 827; *Wiley* v. *State,* 234 Ark. 1006, 356 S. W. 2d 240; and *Carnal* v. *State,* 234 Ark. 1050, 356 S. W. 2d 651.

Affirmed.

ROBINSON and JOHNSON, JJ., dissent.

HOLT. J., disqualifies.